**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1559-EGS |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

## PLAINTIFF'S MOTION FOR LIMITED DISCOVERY

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to the Court's orders of July 10, 2014 and August 14, 2014, respectfully moves the Court for an order permitting limited discovery.   Pursuant to LCvR 7(f), Judicial Watch also respectfully requests a hearing be held on this motion.

Defendant Internal Revenue Service ("the IRS" or "the agency") had two opportunities to provide the Court with the information required by the July 10, 2014 order and submitted a total of seven declarations.   Despite these two opportunities and multiple declarations, the IRS has failed to provide important, material information about how missing e-mails on former IRS Exempt Organizations Director Lois Lerner's laptop may be retrieved from other sources and what efforts the IRS has undertaken to identify and obtain the missing emails from these sources. In light of the IRS's failure to provide this important, material information, Judicial Watch respectfully requests that it be allowed to obtain the information through limited discovery.

In a good faith effort to resolve this dispute, undersigned counsel requested on August 25, 2014 that the IRS supplement its declarations under oath to include the material information omitted from the declarations.   The agency's counsel represented that the IRS will not do so.

The parties also met with Magistrate Judge Facciola on August 25, 2014 to try to reach some consensus over the missing records, but these efforts were unsuccessful.

Before filing this motion, Judicial Watch asked the agency's counsel on September 10, 2014 whether the IRS would consent to limited discovery related to the missing records and the agency's efforts to retrieve them from other, available sources.    Attorneys for the IRS represented they were not able to provide a response as of the time this motion was filed.

## MEMORANDUM OF LAW

1.    This litigation presents a rare case in which revelations about crashed hard drives and missing e-mails, conflicting public reports about backup systems, and material omissions to the Court raise serious questions about an agency's compliance with FOIA.    Limited discovery is needed to answer these questions.

2.    The parties appeared before this Court for a status conference on July 10, 2014, after alarming news reports indicated that a large quantity of the records at issue in this FOIA litigation were missing due to an alleged hard drive crash of Ms. Lerner's laptop.    Based on these reports, it was apparent that the IRS had withheld material information from the Court and Plaintiff for months.    During the July 10, 2014 status conference, the Court ordered the IRS to provide sworn declarations from agency officials describing what happened to the laptop on which Ms. Lerner's e-mails had been stored, how the missing e-mails may be retrieved from other sources, and what efforts, if any, the IRS had undertaken to obtain the missing e-mails from those sources.    In its ruling, the Court explained:

> [T]he declaration should also include information that may assist
> the parties in recovering the subject matter of the lost e-mails from
> other sources.   I think that's highly relevant.   So there will be
> two main parts, A and B.   A will be the Lois Lerner part, and B
> will be, how do we get this information that's been lost from other
> sources, and that's going to be highly relevant as well, and that's

2

also going to inform the Court whether there's a need for limited discovery.[1]

July 10, 2014 Status Conference Trans. at p. 38, lines 9-16; Minute Order, pt. 2.   The declarations were to be provided by August 10, 2014.

3.        The IRS submitted five sworn declarations on August 11, 2014.   In the declarations, the IRS admitted that Ms. Lerner's hard drive had been destroyed.   However, all five declarations omitted information required by Part B of the Court's order – *how to retrieve the missing e-mails from other sources*.   Dkt. No. 26 (July 10, 2014 Minute Order); Transcript of July 10, 2014 Status Hearing ("Trans.") at p. 38, lines 9-15; Minute Order at subpart (2).   As a result, the Court *sua sponte* ordered the IRS on August 14, 2014 to supplement its declarations by August 22, 2014.   As part of its second order, the Court again directed the IRS to provide information about how the missing e-mails may be retrieved from other sources, such as Ms. Lerner's BlackBerry, iPhone or iPad.   August 14, 2014 Minute Order.   The second set of declarations, submitted by the IRS on August 22, 2014, also failed to address how the missing e-mails could be retrieved from other sources and produced to Judicial Watch.

4.        In an August 22, 2014 telephone conference, IRS attorneys informed Judicial Watch about the existence of an electronic data backup system that stores all government records in the case of a catastrophic event.[2]   The agency's attorneys also asserted that the Treasury

---

[1]The parties were also ordered to meet and confer with Magistrate Judge Facciola by September 10, 2014, to discuss how the lost e-mails are retrievable, if at all, from other sources.   Dkt. No. 26 (July 10, 2014 Minute Order); Trans. at p. 39.   While Judicial Watch would like to be able to disclose to the Court the discussions held between the parties before Judge Facciola, agency attorneys have notified counsel that the IRS takes the position that the meet and confer session was a confidential settlement discussion that should not be publicly disclosed.

[2]The backup system described by the IRS's attorneys is similar to what government experts have identified in discussions with Judicial Watch's attorney as a component of the Continuity of Government program.   This program apparently includes an offsite backup system (in addition to the agency's regular onsite backup storage systems) created for purposes of avoiding loss of essential data in the event of a catastrophic event.   *See also* September 5, 2014 letter from House Subcommittee Chairman Jim Jordan, attached as Ex. 1, at p. 3.

Inspector General for Tax Administration ("TIGTA") is looking into whether some of these backup tapes may include the missing e-mails, but that the IRS would not search these tapes because doing so would allegedly be too onerous.   When Judicial Watch requested that the IRS supplement its declarations to include this material information, the IRS refused.   Pursuant to the Court's orders and instructions at the July 10, 2014 status conference, this new information is precisely the kind of material information that would assist the Court in identifying other potential sources for the missing e-mails.   It is also the type of information that the Court stated would be helpful to determine what discovery may be appropriate.   Trans. at p. 38.

5.      To date, Judicial Watch has learned that at least three different backup systems exist that may contain the missing e-mails.   *See* September 5, 2014 letter from House Subcommittee Chairman Jim Jordan, attached as Ex. 1, at pp. 1-2.   The IRS did not identify any of these systems in its seven declarations.[3]   The following is a summary of the piecemeal and often contradictory information made public by the IRS to date, but omitted from its seven declarations:

- On June 20, 2014, IRS Commissioner John Koskinen testified under oath that the IRS confirmed that backup tapes from 2011 no longer exist because they had been recycled pursuant to the agency's six-month retention cycle.   *Id.*

- On July 4, 2014, almost one week before the status conference held in this Court, IRS Legislative Affairs Director Oursler learned that backup tapes from the six-month retention cycle from 2011 do indeed exist.   *Id.*

- On July 17, 2014, IRS Deputy Associate Chief Counsel Thomas Kane testified under oath during a transcribed interview before Congress that

---

[3]   On September 10, 2014, the IRS filed an unsworn notice informing the Court that TIGTA has taken possession of an unidentified number of exchange server drives and that the IRS has been informed by TIGTA that it does not object to the IRS resuming its investigation of the missing emails.   Attached to the notice was a letter from IRS Legislative Affairs Director Leonard Oursler, dated September 5, 2014, that the IRS submitted to Congress.   Dkt. No. 30 (Sept. 5, 2014 Notice by Internal Revenue Service).   The notice is just another example of the piecemeal and inadequate information provided by the IRS in response to the Court's orders.

certain backup recovery tapes from the six-month retention schedule may still exist.   *Id.*

- On August 22, 2014, IRS attorneys admitted to Judicial Watch that a government-wide backup system exists in the event of a catastrophic event.   The IRS attorneys also disclosed that TIGTA was looking at several of these backup tapes.

- On September 5, 2014, Subcommittee Chairman Jim Jordan reported that 760 exchange server drives from the IRS have been located and may contain at least some of the missing records.   Ex. 1.

Based on information made public by Subcommittee Chairman Jordan, these 760 exchange server drivers are different and distinct from the backup tapes that were allegedly destroyed pursuant to the IRS's six-month retention policy.   *Id.*

6.      The existence of these additional storage systems for IRS records and the IRS's failure to disclose these systems to the Court is deeply troubling.    They raise serious questions about the IRS's candor in responding to the Court's orders and its good faith in processing Judicial Watch's FOIA requests.    Even more troubling is that the IRS appears to have knowingly omitted this crucial information from its declarations, two of which were submitted by IRS Counsel Thomas Kane, who had knowledge of at least some backup tapes as early as July 17, 2014.   *Id.*, p. 2; Dkt. Nos. 26-5 (August 11, 2014 Kane Decl.) and 28-2 (August 22, 2014 Kane Decl.).    While it may be possible to retrieve Ms. Lerner's missing e-mails from alternative sources, the IRS has repeatedly demonstrated an unwillingness to disclose information about backup systems and other alternative sources for the e-mails.    It appears unlikely that the IRS will disclose this all-important information unless Judicial Watch is able to cross-examine and ask probing, follow-up questions of knowledgeable agency witnesses.    As a result, limited, focused discovery is necessary to enable Judicial Watch and the Court to obtain this obviously important information.

7.     Discovery is also necessary to identify the universe of other missing records responsive to Judicial Watch's FOIA requests.    In addition to Ms. Lerner's e-mails, Judicial Watch's FOIA requests also seek internal e-mails of other IRS officials involved in the targeting of Tea Party groups, as well as communications between IRS officials and persons outside the agency regarding the targeting.    According to various reports, other IRS officials also experienced hard drive crashes, causing their records to be missing.    Once again, the available information is conflicting.    News reports as of Friday, September 5, 2014 indicate that records are missing for five other IRS officials involved in targeting Tea Party groups.    TIGTA, however, has reported that records of eight officials are missing.    *See* House Committee on Oversight & Government Reform Press Release, dated September 5, 2014, attached as Ex. 2; *see also* Ex. 1 at p. 3, fn. 3[4]

8.     This information is particularly important since e-mails already produced in this litigation – e-mails that fueled a vigorous and continuing congressional inquiry into Ms. Lerner's missing e-mails – demonstrate that Ms. Lerner communicated with officials at the U.S. Department of Justice about prosecuting nonprofit groups that allegedly "lied" about their political activities in seeking tax exempt status.    *See* E-mails from/to Lerner and Flax, May 8 and 9, 2014 (Bates stamped JW1559-00105) and Lerner e-mails re TIGTA report, (Bates stamped JW1559-001304 to 001305), attached as Ex. 3; House Committee on Oversight and Reform Ltr. to Attorney General Eric Holder, dated April 23, 2014, attached as Ex. 4.    Identifying alternative sources from which Ms. Lerner's missing e-mails may be retrieved will also help to identify alternative sources from which the missing e-mails of other IRS officials involved in the targeting of Tea Party groups may be retrieved.

---

[4]    http://observer.com/2014/09/will-orange-be-the-new-black-for-irs-chief-lois-lerner (September 5, 2014); http://hosted.ap.org/dynamic/stories/U/US_IRS_LOST_EMAILS?SITE=AP&SECTION=HOME&TEMPLATE=DEFAULT&CTIME=2014-09-05-15-47-22 (September 5, 2014)

9.    The Internal Revenue Manual contains specific guidelines for ensuring that IRS

record retention policies comply with the Federal Records Act.    *See* 36 C.F.R. § 1236.10(1).

These guidelines provide insight on how the missing e-mails should have been retained and

where they may now be located.    They also speak directly to the type of information required

by the Court's July 10, 2014 order.    Some of the relevant provisions are:

- Internal Revenue Manual, 1.10.3.2.3 (07-08-2011), *Emails as possible Federal Records*.

        1.   All federal employees and federal contractors are required by law to preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency. Records must be properly stored and preserved, available for retrieval and subject to appropriate approved disposition schedules.

                    *       *       *       *

        4.   Please note that maintaining a copy of an email or its attachments within the IRS email MS Outlook application does not meet the requirements of maintaining an official record. Therefore, print and file email and its attachments if they are either permanent records or if they relate to a specific case.

- Internal Revenue Manual, 1.15.6.8 (06-01-2010), *Security of Electronic Records*.

        1.   IRS offices will implement and maintain an effective records security program that incorporates the following:

                    *       *       *       *

        B.       Provides for backup and recovery of records to protect against information loss or corruption.

- Internal Revenue Manual, 1.15.6.9 (3-27-2014), *Retention and Disposition of Electronic Records*.

        1.   The IRS Records Officer is the liaison with NARA and customer organizations for ensuring that electronic records

7

and the related documentation are retained for as long as
needed by the IRS.

2.   Records created within e-mail systems, which meet the
criteria of a federal record, are subject to the same retention
periods as the paper or hard-copy versions. Therefore, these
records must be retained electronically according to the
NARA-approved disposition authority or printed and
associated with the appropriate recordkeeping system.
Temporary e-mail records can be deleted only when they are
eligible for destruction or when they have been printed and
associated with the appropriate recordkeeping system….

Not one of the declarations submitted to the Court discusses this plainly relevant information.

10.     Nor does a single one of the IRS's declarations speak to:   (1) the status of the

backup tapes on the alleged six-month retention schedule; (2) the 760 exchange server drivers; (3)

the catastrophic backup system disclosed to Judicial Watch in the August 22, 2014 telephone

conference; or (4) whether a search is being done for records of assistants who monitored Ms.

Lerner's e-mail communications.[5]   The IRS's unwillingness to provide this crucial information –

information that the IRS was ordered to disclose to this Court, under oath, more than two months

ago – demonstrates that the only way the information is ever likely to be provided is if discovery is

allowed and Judicial Watch is permitted to cross-examine agency witnesses knowledgeable about

these subjects.[6]

11.     While not an ordinary occurrence, discovery in FOIA cases is permissible.   *See*,

*e.g.*, *Landmark Legal Found. v. Envtl. Prot. Agency*, 959 F. Supp. 2d 175 (D.D.C. August 14,

---

[5]   July 19, 2011 e-mail from Lerner to Carl Froehlich and Oct. 16, 2012 e-mail from Lerner to Troy Paterson, Oct.
2012 (Bates stamped JW1559-003384), attached hereto as Ex. 5.

[6]   Mr. Kane's second declaration identifies a BlackBerry used by Ms. Lerner that was "wiped clean" and "removed as
scrap for disposal" in June 2012, but fails to disclose what happened to the information stored on the device or even
that a second BlackBerry was destroyed during the relevant time period for lost records in November 2010.   Dkt. No.
28-2 (August 14, 2014 Kane Decl.) at ¶ 4.   This is just one more example of incomplete information provided by
the agency and of serious allegations of destruction of information after Congressional inquiries began as a result of
information disclosed by Judicial Watch in this litigation.   Ex. 1 at p. 3; *see also* http://youtu.be/z8PNIfg1fDs.

2013) (RCL) (permitting limited discovery to address the adequacy of the search); *Citizens for Responsibility and Ethics in Washington v. Office of Admin.*, No. 07-964 (D.D.C. Feb. 11, 2008) (CKK) (order authorizing jurisdictional discovery in FOIA/PRA case); *Public Citizen Health Research Group v. Food and Drug Admin.*, 997 F. Supp. 56, 72 (D.D.C. 1998) (RCL) (permitting discovery for "investigating the scope of the agency search for responsive documents, the agency's indexing procedures, and the like").   In addition, "when there is evidence of some wrongdoing such as … a material conflict in agency affidavits, *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205 (N.D.N.Y. 1998), limited discovery has been allowed." *Citizens for Responsibility & Ethics in Washington v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 56 (D.D.C. 2006) (RMC).

12.     The unusual circumstances of this case plainly warrant limited, focused discovery. In order for this case to be fairly adjudicated, Judicial Watch and the Court require a clear and thorough understanding of what records are missing, how the missing records can be obtained from alternative sources, and what efforts the IRS has or has not undertaken to obtain the missing records from these other sources.   The public interest also demands clear, thorough answers to these important questions.   Because the IRS has been unwilling to provide this information in any of its seven declarations and because the Court deemed this information highly relevant, Judicial Watch respectfully requests that it be permitted to obtain the information through written discovery and depositions of knowledgeable agency witnesses or some other, court-directed discovery that the Court deems just and appropriate.

WHEREFORE, Judicial Watch respectfully requests that its motion for limited discovery be granted.

Dated:    September 17, 2014                    Respectfully submitted,

                                               JUDICIAL WATCH, INC.


                                               /s/ Ramona R. Cotca
                                               Paul J. Orfanedes, D.C. Bar No. 429716
                                               Ramona R. Cotca, D.C. Bar No. 501159
                                               JUDICIAL WATCH, INC.
                                               425 Third Street SW, Suite 800
                                               Washington, DC   20024
                                               (202) 646-5172

                                               *Attorneys for Plaintiff*